CAMPBELL & WILLIAMS VS WILLIAM CAMERON & CO.

Opinion delivered October 19, 1904.

1. *Mechanic's Liens—Materialman is a Sub-Contractor.*

Under Sec. 4422 Mansf. Dig. (2829 Ind. Ter. Stat.) a materialman who furnishes lumber to a building contractor, without any contract directly with the owner is a sub-contractor and to acquire a lien for the material furnished must comply with all provisions of Secs. 4402, 4403, 4404, 4405 and 4421 Mansf. Dig. (2869, 2870, 2871, 2872 and 2888 Ind. Ter. Stat.).

2. *Mechanic's Liens—Statutes Governing—Construction.*

Where a materialman furnishing lumber to a contractor fails to give notice to the owner before furnishing such material that he intends to claim a lien, and fails to procure and filed with clerk of court a written settlement of account with the contractor or his own statement after demanding and failing to procure this settlement, he is not entitled to a lien.

3. *Appeal—Assignments of Error—When Too General.*

Where, on appeal, the assignments of error are general, still, in an equity case, if they are sufficient to inform the court of the matters passed upon and complained of, they will be reviewed.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Action by William Cameron & Co. against Campbell & Williams and others. Judgment for plaintiffs. Defendants Campbell & Williams appeal. Reversed.

This is an action brought in the United States Court at Chickasha, in the Southern District of the Indian Territory, by

the appellees, against one J. M. Ellis and the appellants, C. M. Campbell and W. G. Williams, under the firm name of Campbell & Williams, to recover of the said defendant J. M. Ellis the sum of $583.90, alleged to be due from one J. B. Pope to Ellis for lumber and building material sold and delivered to him to be used in the erection of a certain store building on a lot in the town of Minco, Ind. Ter., belonging to Williams & Co., the appellants. Ellis was a building contractor, and had contracted with Campbell & Williams to build a storehouse on their lot for a certain sum specified in the contract. The complaint alleges and the proof shows that lumber and other material for the construction of the building was purchased by Ellis from the said J. B. Pope to the amount of $952.30. The plaintiffs allege that during the construction and after the completion of the building Ellis was paid for the material furnished the sum of $368.40, leaving due and unpaid the sum of $583.90, the sum sued for. This account was, for a valuable consideration, and before the filing of the suit, assigned to the plaintiffs. The plaintiffs further allege that their assignor, Pope, had given the proper notice to Campbell & Williams, and performed all the other duties required by the statute to secure a lien on the building and lot upon which it was erected; hence they were made parties to the suit. The case was in equity. Ellis failed to answer. Campbell & Williams filed their answer, admitting the building contract with Ellis; that he constructed the building, and that Pope furnished to Ellis lumber and material. They deny that the amount and value of the lumber and material was as alleged, or that Pope notified them of the fact, or of the probable value of the materials furnished, or that he, within 90 days from the date of furnishing said materials, made affidavit as required by law, and caused itemized statement of said account, together with affidavit, to be filed and recorded in the office of the clerk of the United States Court for the Southern District of the Indian Territory, and deny the lien. They admit that there is now due Ellis on said contract

the sum of $147.47. The facts established by the proof, necessary to the decision of this case, will be set out in the opinion. Proof was taken, and the cause referred ro the master, with directions to find the facts. He made his report, to which exceptions were filed, heard, and overruled. Decree for plaintiff by default as against Ellis for $583.90, and declaring a lien upon the house and lot of Campbell & Williams, and foreclosing the same, etc. Ellis has not appealed.

*Bond & Melton*, for appellants.

*Wallace Hendricks*, for appellees.

CLAYTON, J. The appellants assign error on two grounds: First. That the court erred in overruling the exception to the master's report in his findings of fact; and, second, that the court erred in entering any decree against them in excess of $147.47, admitted by defendants in their answer to be due and unpaid, because of the fact that Pope, plaintiffs' assignor, failed to perform the duties required of him by the statute to avail himself of the lien on defendants' building and lot. If the second stipulation of error is well taken, it will not be necessary for us to pass upon the first, because, if there were no lien established, that will settle the whole case as between appellants and appellees. We will, therefore, first consider it.

The statute (Mansfield's Digest), in so far as it is necessary to set it out, provides:

"Sec. 4402. Every mechanic, builder, artisan, workman, laborer, or other person who shall do or perform any work or labor upon or furnish any materials, machinery or fixtures for any building, erection or other improvement upon land, including contractors, sub-contractors, material furnishers, mechanics and

laborers, under or by virtue of any contract, express or implied, with the owner or proprietor thereof, or his agent, trustee, contractor or sub-contractor, upon complying with the provisions of this act, shall have for his work or labor done, or materials, machinery or fixtures furnished, a lien upon such building, erection or improvement, and upon the land belonging to such owner or proprietor on which the same is situated, to secure the payment of such work or labor done, or materials, machinery or fixtures furnished.

"Sec. 4403.    Every sub-contractor wishing to avail himself of the benefits of this act shall give notice to the owner or proprietor or his agent or trustee before or at the time he furnishes any of the things aforesaid, or performs any of the labor, of his intention to furnish or perform the same, and the probable value thereof; and, if afterward the things are furnished or labor done, the sub-contractor shall settle with the contractor therefor, and having made the settlement in writing, the same, signed by the contractor, and certified by him to be just, shall be presented to the owner or proprietor, or his agent or trustee, and left with him, and within sixty days from the time the things shall have been furnished, or the labor performed, the sub-contractor shall file with the clerk of the circuit court of the county in which the building, erection or other improvement is situated, a copy of the settlement between him and the contractor, which shall be a lien on the building, erection or other improvement for which the things were furnished or the labor performed, and shall at the time file a correct description of the property to be charged with the lien, the correctness of all which shall be verified by affidavit.

"Sec. 4404.    In case the contractor shall for any reason fail or refuse to make and sign such settlement in writing with the sub-contractor when the same is demanded, then "the sub-contractor shall make a just and true statement of work and labor

done or things furnished by him, giving all credits, which he shall present to the owner or proprietor, his agent or trustee, and shall also file a copy of the same, verified by affidavit, with the circuit clerk, as provided in section 4403.

"Sec. 4405.   The certificate of settlement made as aforesaid, or the statement of the sub-contractor, shall be a justification to the employer in withholding from the contractor the amount appearing thereby to be due to the sub-contractor until he is satisfied the same has been paid, and the employer shall become the surety of the contractor to the sub-contractor for the amount due for such work and labor done or things furnished, not, however, exceeding the value thereof, as notified under section 4403."

"Sec. 4421.   In case any sub-contractor shall not have notified the owner, proprietor, his agent or trustee, before furnishing the things aforesaid, or doing the work and labor, as provided for in section 4403, but shall furnish to him the account as provided in said section or the statement provided for in section 4404, and in all other respects shall comply with the provisions of this act, he shall have the benefit hereof the same as if he had given notice as required herein, to the extent, and only to the extent, that such owner or proprietor can safely, with his engagements and liabilities on account of such building, erection or other improvement, withhold any amount by him owing to his contractor for such sub-contractor.

"Sec. 4422.   All persons furnishing things or doing work provided for by this act shall be considered sub-contractors, except such as have contracts therefor directly with the owner, proprietor, his agent or trustee.

"Sec. 4423.   The lien herein given shall be transferable and assignable."

Ind. Ter. St. 1899, §§ 2869, 2870, 2871, 2872, 2888, 2889, ·,2890.

Sections 4422 and 4423 (sections 2889, 2890), above set out, settle the question that Pope, plaintiffs' assignor, was a subcontractor, and that his assignment of the lien, if any existed to the plaintiffs, was valid. Did, then, plaintiffs' assignor, Pope, perform the duties required by section 4403 or 4421 (sections 2870, 2888), necessary to avail himself of the lien? This must be answered by the proof. The building contract between defendants and Ellis, the contractor, was made about the middle of July, 1902. The exact time that Ellis contracted with Pope to furnish the building material does not appear, but the first item charged in the account filed with the clerk is dated July 29th. Up to and including September 8th, there had been furnished materials to the value of $678.15. At or about this time Pope was pressing Ellis for money. Ellis went to Campbell, and informed him of the matter, and, as Ellis was erecting two other buildings immediately adjoining Campbell's, for which Pope was also furnishing building material, Campbell became apprehensive that they might get confused in the matter, and charge him with material put in the other buildings, and requested Ellis to see Pope, and procure from him a written statement of the full amount due, together with the material furnished. This was done, and on the 13th day of September, Pope furnished the statement showing all of the material furnished up to and including the 8th, with its value, which was carried by Ellis to Campbell, who then, at the request of Ellis, drew his check for 350, payable to Pope, leaving a balance due up to that time of $318.40. This check was handed to Ellis, and by him taken to Pope. A few days prior to this Campbell had seen Pope, and told him he thought of going to Ellis, and suggesting to him a settlement. On the 29th of December of the same year there was filed with the clerk by Pope a sworn and itemized statement

of the whole account, including the statement above set out. The last item of the statement was dated November 13, 1902. The statement was signed by Pope, and his affidavit of its correctness was attached, but Ellis had not signed the account, nor certified that it was just, as required by section 4403 (section 2870), nor was there any proof of a settlement in writing, or any other way, between Ellis and Pope, or that one had been demanded by Pope, or that he had refused or failed to do so after demand. A copy of this statement was handed to defendants a few days before the date of filing.

The record fails to disclose any other acts done or words spoken or papers written by Pope, looking to the assertion of or reliance on his lien, than above set out, and in his testimony he nowhere claims that he was relying on it, or that he did any act with a view of perfecting it, until after all the material had been furnished and the building completed; nor does the testimony of Mr. Ellis or any other witness show any such intention on the part of Mr. Pope, unless the statement of September 13th has that effect. And that statement must necessarily be the sole reliance of the plaintiffs. That statement was made at the request of the defendants for the purpose above stated. It was an itemized account, showing the material, with their prices, already sold and delivered at intervals from July 29th to September 8th. There was no intimation in it of an intention to furnish other material, or the probable value thereof. If it were intended for the purpose of asserting the lien as to the material already delivered, it came too late, and as to that to be thereafter furnished it was wholly insufficient. Section 4402, Mansf. Dig. (Ind. Ter. St. 1899, § 2869), provides that "material furnishers," who, by section 4422 (section 2889), are made sub-contractors, shall, "upon complying with the provisions of this act" have for their material furnished a lien upon the building into which it goes, and upon the lot upon which the building stands. As to sub-

contractors, section 4403 (section 2870), above set out, among
other things, requires that the sub-contractor, if he wishes to
avail himself of the benefits of the act, shall "give notice to the
owner or proprietor, or his agent or trustee, before or at the time
he furnished any of the things aforesaid, * * * of his
intention to furnish them, and the probable value thereof." The
statement of September 13th does not do this. It is a mere bill
for the payment of a debt past due, arising on an obligation to
pay the price of material already sold and delivered, without any
reference or relation to others to be thereafter furnished; and
therefore there was a total noncompliance with this provision of
the statute. And, unless this defect is cured by section 4421
(section 2888), it is fatal to appellees' right to have a lien declared
upon the premises. "The object of the provision that a sub-
contractor shall give notice to the owner of his demand and
claim of lien is that the owner may be enabled to keep back from
the amount payable to the contractor a sufficient sum to in-
demnify himself against the claims of sub-contractors upon the
property. The failure of the sub-contractor to give the required
notice of his intention to claim a lien prevents his acquiring any
lien, or a lien for more than is actually due from the owner to the
contractor at the time the notice is served. If a notice by one
furnishing materials or rendering services is required to be given
to the owner within sixty days after he shall have commenced to
furnish material or render services, and he fails to give the notice
within that time, he cannot afterwards give a notice which shall
relate back sixty days from the time of giving it, and secure a
lien from such time. If the statute requires the sub-contractor
to state in his notice the probable value of the work or materials
which he intends to furnish, and he fails to specify any
particular sum for their probable value, his notice is ineffectual.
The notice takes effect from the time it is given or served in the
manner prescribed. From that time the owner is required to
retain money due or to become due upon the contract, and to

apply it to the payment of the claim of which the sub-contractor has notified him, if the sub-contractor follows the requirements of the statute and establishes his right. A notice required to be given to the owner within a certain time cannot be amended after that time has elapsed. Notice in accordance with the statute is essential to a lien by a sub-contractor. If he has furnished materials to one who has possession of land under a contract for the purchase of it, unless the circumstances are such as to make the vendor personally liable for them, the materialman must give him notice of his intention to claim a lien." "After the expiration of the time allowed a sub-contractor for serving notice of his claim upon the owner, no notice having been served, the latter may proceed to pay off the contractor, whatever his knowledge may be as to the claims of the sub-contractor. He is then justified in presuming that the right to a lien has been waived." Jones on Liens, vol. 2, §§ 1286, 1288, 1289. Section 4421 (section 2888), as far as it relates to the matters involved in this case is concerned, would give to the plaintiffs the benefit of the act the same as if they had given the notice required, to the extent, and only to the extent, that the owner could safely, with his engagements and liabilities on account of such building, withhold any amount by him owing to his contractor, Ellis, for such sub-contractor, notwithstanding the fact that Pope,. the sub-contractor, had failed to notify the plaintiffs of his intention to furnish the material before it was furnished, as provided for in section 4403 (section 2870), if he had furnished the account provided for in that section, or the statement provided for in section 4404 (section 2871), and in all other respects should have complied with the provisions of the act. Section 4403 (section 2870) was not complied with in any respect. The notice was not given, nor was there any written settlement signed by Ellis and certified to by him as being just, made between him and Pope, and furnished to defendants, or copy thereof filed with the clerk. No written settlement was made at all. The proof fails

to show any settlement of any kind between them, or any demand on the part of Pope that such should be done. Section 4404 (section 2871) permits the sub-contractor to furnish and file his own statement, certified under oath by him as being correct, only after demand on the contractor to make and sign a written statement of the account has been made and refused, or for other reasons not done after demand made. Here there was no effort on the part of plaintiffs' assignor, the sub-contractor, to obtain the settlement. His right to substitute his own account for the settlement depended on a demand and a failure to comply with the demand, and the burden of proof was upon the plaintiffs to show it. They have failed to do it. None was made. The sole condition which would have justified the filing of the unsettled statement of the account was not performed. And this is not technical. A builder who is called upon to pay off the debts of one with whom he has contractual relations has the right to know the exact amount he is called upon to pay, if it can be adjusted between the contractor and the sub-contractor, and, if he is satisfied with this adjustment, to pay it off, and thus be relieved of the annoyance and expense of a suit to determine the amount due. "A lien can be secured only by compliance with the statute in filing a notice, claim, or statement of lien in the manner and within the time prescribed. No other notice or claim of lien, though brought to the knowledge of the owner, or of a purchaser from him, has any effect. The filing of the account or claim of lien is a prerequisite to the enforcement of the lien. It does not bring the lien into existence, for the lien exists inchoately from the time of the making of the contract, or from the time the building was commenced, or the work upon it was commenced, whichever the particular statute prescribes as the beginning of the lien. The lien exists by virtue of statutory provisions, and the requirements prescribed for securing the benefits of this remedy must be observed. All the particulars required to be stated in the notice creating the lien are

material. They are provided for in order that a proper record or index or docket may be made of the claim, and thereby notice of the claim given to the owner, and protection afforded to purchasers and mortgagees. The omission of any of the particulars required by statute to be stated is fatal to the lien. The facts required in the notice must be averred in the complaint, in order to show a cause of action; and, if the notice is defective by reason of the omission of the name of the owner, or of anything which the statute requires, the defect cannot be amended or corrected in the complaint." Jones on Liens, §§ 1389, 1390, vol. 2.

The fact is that none of the material things required of the statute to be done that the sub-contractor may avail himself of the lien were done in this transaction by plaintiffs' assignor. And yet we are asked by plaintiffs' counsel in his brief to sustain the decree of the court below, because certain courts—notably that of Arkansas—have held that, inasmuch as the builder has received the benefit of the furnished material, the construction of the statute by the courts must be liberal in favor of upholding the lien. But in all the cases cited, and all others holding that the statute must be thus construed, it is laid down that there must at least be a substantial compliance with the statute. In this case there was no compliance with any of its provisions. Courts are not permitted to construe away the plain terms of the statute and set up their liberality against the written will of the Legislature. When the statute confers mutual rights and obligations on two men, or classes of men, liberality toward one is always at the expense of illiberality toward the other. As plaintiffs' assignor has failed in any substantial way to comply with the provisions of the statute giving to him a lien on defendants' premises, he cannot maintain this action against the appellants, but must look to Ellis, against whom he has procured a judgment, for the payment of his debt.

Entertaining this view of the case, we do not deem it necessary to pass on the first assignment of error.

Counsel for appellees contends that the assignments of error are too general, and not sufficiently specific under the rules of this court. While it is true that they are largely open to this criticism, still, while deprecating this practice, it being a case in equity, with the whole case before us, we find them sufficient to inform us of the matters passed upon.

The decree of the court below is reversed, and the case remanded, with directions to dismiss the complaint as to appellants.

RAYMOND, C. J., and GILL, J., concur.